UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fairview Health Services, d/b/a University
of Minnesota Medical Center,

      Plaintiff,

v.

Armed Forces Office of the Royal
Embassy of Saudi Arabia,

      Defendant.

Court File No. _____

**COMPLAINT**

Plaintiff Fairview Health Services, d/b/a University of Minnesota Medical Center, Fairview brings this Complaint against Defendant Armed Forces Office of the Royal Embassy of Saudi Arabia ("AFO").

## The Parties

1.    Fairview/UMMC, is an award-winning nonprofit academic health care system based in Minneapolis, Minnesota. Fairview/UMMC, a global leader in the provision of transplantation services, is a nonprofit corporation under Minnesota law.

2.    Defendant AFO is a subdivision of the permanent diplomatic mission of the Kingdom of Saudi Arabia to the United States of America.

## Jurisdiction and Venue

3.    This Court has jurisdiction over the claims against AFO under 28 U.S.C. § 1330(a) because this is a lawsuit against a foreign state that is not entitled to (or has waived) immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a).

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1132(f)(1) because a substantial part of the events and omissions giving rise to the claim occurred in this District.

## Minnesota International Medicine and Global Medical Services

5.      Prior to the spring of 2018, Fairview/UMMC contracted with a company called Minnesota International Medicine to provide certain patient assistance services to individuals from outside the United States seeking care through Fairview/UMMC. Pursuant to this agreement, known as the Patient Services Agreement, (the "Agreement"), Minnesota International invoiced and collected for patient care provided by Fairview/UMMC. Minnesota International was then responsible for making payment to Fairview/UMMC. Under this arrangement, Fairview/UMMC did not directly manage payment with any foreign government or foreign national; such arrangements were handled exclusively through Minnesota International.

6.      In or about May 2018, a company called Global Medical Services purchased substantially all of Minnesota International's assets. The Agreement between Minnesota International and Fairview/UMMC was not assigned to Global Medical and therefore terminated. Global Medical and Fairview/UMMC attempted to negotiate a replacement agreement to allow the business relationship to continue, but no agreement was reached.

## The Medical Services to L.A. and R.A.

7.      In or about June 2018, Global Medical informed Fairview/UMMC that a Saudi national and member or former member of the armed forces of Saudi Arabia would

be arriving in Minnesota to seek treatment at Fairview/UMMC for his two children, L.A. and R.A., in just a few days. Fairview/UMMC had previously treated L.A. and R.A while the Patient Services Agreement was in effect.

8.      University of Minnesota Medical Center provided medical services to L.A. between June 2018 and November 2019 and to R.A. between June 2018 and December 2019 at its Minnesota facilities, using Minnesota-licensed staff. This lawsuit concerns payment for services rendered between August 1, 2018 and December 5, 2019.

### The Preferred Rate Agreements

9.      In 2019, Fairview/UMMC's then-Senior Contract Manager, Maureen Ring, was contacted by Annemarie Brana-Todd of Medical Cost Advocate, Inc. ("MCA"). MCA is an American company located in Wyckoff, New Jersey. MCA's website explains that it is a "trusted partner" for individual consumers "to review and negotiate [the consumer's] medical expenses before or after treatment."

10.     Ms. Brana-Todd explained that AFO had been unable to reach Minnesota International or Global Medical regarding making payment for the services provided to A.L. and R.L. and that AFO had engaged MCA to negotiate and arrange payment with Fairview/UMMC directly.

11.     Ms. Ring informed Ms. Brana-Todd that Fairview/UMMC no longer had any contractual relationship or affiliation with Minnesota International or Global Medical.

12.     Prior to engaging MCA, AFO had never negotiated payment directly with Fairview/UMMC.

- 3 -

13.     On AFO's behalf, MCA then negotiated multiple "Preferred Rate Agreements" covering the services provided to A.L. and R.L. These Preferred Rate Agreements were executed in June 2019. True and correct copies of the Preferred Rate Agreements at issue are attached as Exhibit A. The total negotiated amount at issue is $1,301,272.85—a discount from Fairview/UMMC's billed charges. The Preferred Rate Agreements were executed in the form drafted and proposed by MCA.

14.     The purpose and nature of these Preferred Rate Agreements was to ensure payment to Fairview/UMMC in exchange for services that Fairview/UMMC provided to individuals—namely, the medical care provided to A.L. and R.L and arranged by AFO. The purpose and nature of the Preferred Rate Agreements is functionally the same as ordinary contracts entered by private parties—including employers and insurance companies—to reimburse health care providers for the costs of performing medical services. The act of entering agreements such as these Preferred Agreements is not an essentially or uniquely governmental or sovereign activity. To the contrary, such agreements between healthcare providers and payors are commonplace in the private healthcare industry. When AFO agreed to contract with Fairview/UMMC for the provision of healthcare services, it did so as a commercial actor in the commercial market for healthcare services, not as a sovereign actor furthering the purely sovereign interests of the Kingdom of Saudi Arabia. These contracts for the purchase or sale of services rendered to individuals are therefore properly characterized as commercial activity.

**Fairview/UMMC Provides Specific Directions for Payment**

15.     Within a few days, Ms. Brana-Todd sent an email asking Ms. Ring how AFO should make payment under the Preferred Rate Agreements. Ms. Ring advised AFO on June 26, 2019 to "put the payment/checks to my attention when mailing to Fairview[/UMMC], 400 Stinson Boulevard, Minneapolis, MN 55413." Ms. Ring explained that the purpose of directing payment this way was so that she could "be sure that the dollars are applied correctly to the two patient accounts." That same day, Ms. Brana-Todd passed these instructions on to AFO via email, specifically instructing AFO to send the checks to Fairview/UMMC "AND iNCLUDE [sic] Attention Maureen Ring[.]"

**AFO Obscures Its Failure to Adhere to Ms. Ring's Directions**

16.     When Ms. Ring had not received payment by September 2019, she again reached out to Ms. Brana-Todd to learn whether payment was made. Ms. Brana-Todd contacted AFO by email on September 16, 2019 "to confirm that the payment was made to Fairview[/UMMC] hospital" and that the payments were sent "Attn: Maureen Ring."

17.     AFO advised that it sent "payments two weeks ago and all the checks were cashed by the hospital." When Ms. Brana-Todd specifically asked whether the checks were sent to Ms. Ring's attention, AFO falsely stated, "It was to her attention."

18.     After confirming with Ms. Ring again that no payment was received, on September 18, 2019, Ms. Brana-Todd again reached out to AFO advising that the checks were not received and reminding AFO that "[w]e had given very specific instructions regarding payment to Fairview[/UMMC]." Ms. Brana-Todd requested check numbers,

the check amounts, the names printed on the checks and the address the checks were sent

to. Upon information and belief, AFO did not respond to Ms. Brana-Todd's inquiry.

19.    Ms. Brana-Todd followed up again a week later, on September 24, 2019,

advising that the matter was "URGENT" and asking to confirm the check numbers and

where they had been sent. Ms. Brana-Todd advised that "If there was some mistake

made, please let me know immediately."

20.    AFO finally responded, advising that the person who could help was on

vacation and would not be available for another week. Ms. Brana-Todd reiterated that the

matter could not wait "and there is concern that these checks were sent to the vendor who

the hospital no longer works with instead of to Maureen [Ring] as instructed." Ms. Brana-

Todd emphasized that "It is a lot of money, and Maureen [Ring] needs to account for it."

21.    AFO responded on September 26, 2019 providing the check numbers and

the amounts, but not the names printed on the checks or the address the checks were sent

to as requested. That same afternoon, Ms. Brana-Todd again requested information about

"who these [checks] were sent to and what address was used."

22.    Ms. Brana-Todd followed up again on October 7, 2019. Ms. Brana-Todd

requested information about how the checks were sent and information about whether

they were cashed. AFO responded that the checks were sent via FedEx but that they did

not have a tracking number. AFO stated, "As far as our office [is] concern[ed] these

balances were paid." Ms. Brana-Todd again followed up, stating, "I am very concerned

that [the payment] was sent to the old vendor who has now filed for bankruptcy."

23.     It was not until October 10, 2019 that AFO acknowledged that it had not followed Ms. Ring's instructions for payment, conveyed through Ms. Brana-Todd— namely to make payment to Fairview/UMMC and to send the checks to Ms. Ring's attention. Instead, AFO made the checks payable only to "Minnesota Medicine" rather than to Fairview/UMMC. AFO also acknowledged that the checks had not been sent to Ms. Ring's attention as instructed and were instead delivered to Fairview/UMMC's general address on September 4, 2019.

24.     Because the checks were not directed to Ms. Ring's attention as instructed, they were forwarded to Minnesota International, which, upon information and belief, wrongfully cashed them. Neither Minnesota International nor Global Medical has made any payment to Fairview/UMMC in connection with these services.

25.     To date, Fairview/UMMC has not received any payment for these services and the amounts remain owing.

## Count I – Breach of Contract

26.     Fairview/UMMC realleges paragraphs 1-25.

27.     Fairview/UMMC and AFO entered into written Preferred Rate Agreements via AFO's agent, MCA. Under these contracts, AFO agreed to pay Fairview/UMMC specified sums for medical services rendered to A.L. and R.L.

28.     Fairview/UMMC performed these medical services for A.L. and R.L.

29.     Fairview/UMMC demanded that payment be made according to specific directions, which were communicated to AFO by its agent MCA. AFO did not adhere to these directions and, as a result, no payment has been received by Fairview.

30.    Fairview/UMMC has demanded payment from AFO and AFO has refused to pay for the services rendered to A.L. and R.L. as provided in the Preferred Rate Agreements. AFO's failure to tender payment is a breach of the Preferred Rate Agreements. Fairview/UMMC has sustained damages as a result of AFO's failure to pay in an amount to be proved at trial.

### Count II – Quantum Meruit

31.    Fairview/UMMC realleges paragraphs 1-30.

32.    Fairview/UMMC has conferred a benefit on AFO by providing valuable medical services between August 1, 2018 and December 5, 2019 to A.L. and R.L., the children of a Saudi national and current or former member of Armed Forces of Saudi Arabia.

33.    AFO promised to pay Fairview/UMMC for these services provided to A.L. and R.L. Fairview/UMMC has not received reasonable—or any—compensation for these services.

34.    Fairview/UMMC is entitled to the reasonable value of the services it provided to A.L. and R.L.

### Count III – Breach of Implied Covenant of Good Faith and Fair Dealing

35.    Fairview/UMMC realleges paragraphs 1-34.

36.    Fairview/UMMC and AFO entered into written Preferred Rate Agreements via AFO's agent, MCA. Under these contracts, AFO agreed to pay Fairview/UMMC specified sums for medical services rendered to A.L. and R.L.

37.     These agreements included an implied covenant of good faith and fair dealing that all parties would act in good faith to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts.

38.     Fairview/UMMC met all of its contractual obligations, including by providing medical services to A.L. and R.L. and providing directions for payment to be made. AFO breached the implied covenant of good faith and fair dealing by failing to adhere to the directions for payment provided by Fairview/UMMC; concealing its failure to adhere to these directions; and directing payment to an entity other than Fairview/UMMC.

39.     AFO's failure to act in good faith denied Fairview/UMMC the full benefit of its bargain and Fairview/UMMC has sustained damages as a result in an amount to be proved at trial.

WHEREFORE, Fairview/UMMC respectfully prays for the following relief: (a) entry of judgment against AFO on all claims for relief, (b) an order awarding Fairview/UMMC damages it has sustained as a result of AFO's breaches in an amount proved at trial; (c) an order of restitution in the amount equal to the reasonable value of the services Fairview/UMMC provided to A.L. and R.L. for which Fairview/UMMC has not yet been paid; (d) prejudgment interest; and (e) other relief that this Court deems just and equitable.

Dated: December 14, 2021

*/s/ David P. Bunde*
David P. Bunde (0138344)
Pari I. McGarraugh (0395524)
Jacob P. Harris (0399255)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone:  612.492.7000
Facsimile:   612.492.7077
*dbunde@fredlaw.com*
*pmcgarraugh@fredlaw.com*
*jharris@fredlaw.com*

***Attorneys for Plaintiff***