UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Fairview Health Services, *doing business as*
University of Minnesota Medical Center,                    File No. 21-cv-2666 (ECT/TNL)

       Plaintiff and Counter-
       Defendant,

v.                                                                            **OPINION AND ORDER**

Armed Forces Office of the Royal Embassy
of Saudi Arabia,

       Defendant, Counter-Plaintiff,
       and Third-Party Plaintiff,

v.

Medical Cost Advocate, Inc., Global
Medical Services, LLC, and International
Medical Center of Minnesota, LLC,
*formerly doing business as* Minnesota
International Medicine,

       Third-Party Defendants.

---

David P. Bunde, Pari McGarraugh, Jacob Patsch Harris, and William Thomas Wheeler, Frederickson & Byron, Minneapolis, MN, for Plaintiff Fairview Health Services.

Cormac Connor, George Edward Stewart, III, and Julia Anne Bonestroo Banegas, Husch Blackwell LLP, Washington, D.C., and Aaron B. Chapin, Husch Blackwell LLP, Chicago, IL, for Defendant Armed Forces Office of the Royal Embassy of Saudi Arabia.

Charles E. Jones, Sara Filo, Kelly C. Engebretson, and Megan Renslow, Moss & Barnett, Minneapolis, MN, for Third-Party Defendant Medical Cost Advocate, Inc.

Plaintiff Fairview Health Services brought this case seeking to recover more than $1.3 million in medical bills from Defendant Armed Forces Office of the Royal Embassy of Saudi Arabia. The bills are for medical services Fairview provided to two Saudi citizens. The basic suit-provoking problem is that, when the Armed Forces Office mailed payment for this amount to Fairview, it omitted particular addressee information on the package and named the wrong payee on the checks. Fairview did not cash the checks. It forwarded them to the listed payee, who took the money. The core issue is who is responsible for this mix up.

This is the case's second round of dispositive motions. In the first round, the Armed Forces Office sought dismissal on alternative jurisdictional, procedural, and merits grounds. This motion was denied. *Fairview Health Servs. v. Armed Forces Off. of the Royal Embassy of Saudi Arabia*. --- F. Supp. 3d ---, No. 21-cv-2666 (ECT/TNL), 2023 WL 4203035 (D. Minn. June 27, 2023). The Armed Forces Office subsequently filed a responsive pleading that includes counterclaims and third-party claims.

In this second round, Fairview and a third-party defendant, Medical Cost Advocate, Inc., seek dismissal of the counterclaims and third-party claims asserted against them under Federal Rule of Civil Procedure 12(b)(6). The motions will be granted. The Armed Forces Office's claims lack plausible factual support. Regardless, the claims will be dismissed without prejudice to permit the Armed Forces Office the opportunity, if it chooses, to seek leave to amend in the ordinary course before Magistrate Judge Tony N. Leung. The original deadline established by the scheduling order for such motions has not passed. It runs December 29.

2

I[1]

*The parties are a healthcare provider, a foreign sovereign, and various intermediaries.*  Fairview, which does business as the University of Minnesota Medical Center, is a nonprofit healthcare corporation providing services in Minnesota.  Countercl. [ECF No. 42] ¶ 4.[2]  The Armed Forces Office is part of the Kingdom of Saudi Arabia's embassy and diplomatic mission in the United States.  *Id.* ¶ 2.  Medical Cost Advocate, Inc. ("MCA") is a New Jersey corporation.  *Id.* ¶ 7.  The Armed Forces Office retained MCA as an agent "to assist with medical bill review and negotiation services related to treatment of various patients by various healthcare providers in the United States."  *Id.* ¶ 24.  The other third-party defendants are Minnesota International Medicine ("MIM") and Global Medical Services, LLC ("GMS").  MIM was a Minnesota limited liability company that acted as an intermediary between Fairview and the Armed Forces Office.  *Id.* ¶¶ 5, 15.  GMS acquired MIM in May 2018.  *Id.* ¶¶ 6, 23.

---

[1]    In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the challenged pleading and draw all reasonable inferences in the plaintiffs' favor.  *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  In accordance with these rules, the background facts are taken from the Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims [ECF No. 42] filed by the Armed Forces Office and documents necessarily embraced by that pleading.  *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

[2]    The Armed Forces Office's responsive pleading [ECF No. 42] contains several separately numbered sections of paragraphs.  Citations to the responsive pleading in this opinion and order refer to paragraphs in the "Counterclaims and Third-Party Complaint" section at pages 13–46.

*Fairview provided healthcare to Saudi citizens.*   In 2018 and 2019, the Armed Forces Office arranged for two Saudi children, R.A. and L.A., to receive specialized medical treatment at a Fairview hospital. *Id.* ¶¶ 13–14.  The treatment ultimately generated $1,301,272.95 in negotiated charges. *See id.* ¶ 39.

*The parties used intermediary agents to arrange treatment, negotiate billed charges, and facilitate payment.*   Fairview and the Armed Forces Office did not interact directly.  Fairview's bills were funneled through an intermediary who provided translation and negotiation services. *Id.* ¶¶ 15, 21.  Before the spring of 2018, Fairview used MIM as an intermediary. *Id.* ¶¶ 16, 100.  Fairview would create invoices and send them to MIM, who in turn would send them to the Armed Forces Office. *Id.* ¶ 16.  The Armed Forces Office would submit payment to MIM, who would in turn submit payment to Fairview. *Id.* ¶ 17.  The Armed Forces Office and MIM entered into a series of "Financial Guarantees," whereby the Armed Forces Office agreed to pay MIM for Fairview's medical services upon receipt of specific billing information. *Id.* ¶¶ 94–95.  After GMS acquired MIM in May 2018, Fairview did not renew its agreement for foreign intermediary billing services with GMS. *Id.* ¶ 23.  The Armed Forces Office entered into an agreement with another intermediary, MCA, to serve as its agent, assisting with medical bill review and negotiation. *Id.* ¶¶ 24–25a.  According to the Armed Forces Office, "MCA held itself out . . . as being able to help guide the [Armed Forces Office] through the complexities of the health care system in the United States and to be able to use its experience and expertise to help the [Armed Forces Office] obtain discounts and rate reductions." *Id.* ¶ 26.  MCA represented that its services would be "managed by a US Attorney." *Id.* ¶ 25c; Ex. R [ECF

4

No. 44-9] § 1.3. Under their agreement, if MCA negotiated a rate reduction, it would present the Armed Forces Office with a "Preferred Rate Agreement" to memorialize the negotiated terms. Countercl. ¶ 25d. The Armed Forces Office paid MCA hourly for negotiations that did not result in reduced prices, and a twenty percent commission for those that did result in a reduction. *Id.* ¶ 25e. The Armed Forces Office and MCA agreed to hold each other's confidential information in "strict confidence." *Id.* ¶ 25g–f.

*Fairview billed the Armed Forces Office for the care it provided to R.A. and L.A.* MIM sent invoices for R.A. and L.A.'s medical care to the Armed Forces Office throughout 2018 and 2019. *See* Exs. A–P [ECF Nos. 43-1–44-7] (at page 1 of each exhibit). MCA, on behalf of the Armed Forces Office, began negotiating with Fairview regarding the R.A. and L.A. invoices in mid-2019. *Id.* ¶ 27. On June 20, 2019, MCA and the Armed Forces Office entered into Preferred Rate Agreements for certain invoices. *Id.* ¶ 28; Exs. A–P.

*Fairview sent payment instructions to MCA.* Before the Armed Forces Office paid for R.A. and L.A.'s care, Fairview informed MCA that it was no longer working with MIM, and that payment should be sent directly to Fairview. Countercl. ¶ 35. MCA provided the Armed Forces Office with the following instructions:

> When making payment agreements for Minnesota Medicine please send checks to the following address AND iNCLUDE [sic] Attention Maureen Ring:
>
> Fairview Health Services
> Attention: Maureen Ring
> 400 Stinson Boulevard
> Minneapolis MN 55413

*Id.* ¶ 36; Ex. S [ECF No. 44-10]. More specific instructions regarding the payee were not given. Countercl. ¶ 37. The Armed Forces Office asserts that "Minnesota Medicine" is ambiguous. *Id.* Regardless, the Armed Forces Office made the checks payable to MIM, as it had done in the past. *See, e.g.*, *id.* ¶¶ 38, 62, 84, 141.

*The Armed Forces Office mailed payment, and Fairview forwarded the checks to MIM.* On September 4, 2019, the Armed Forces Office sent Fairview fourteen checks (made payable to MIM) totaling more than $1.3 million via overnight mail. *Id.* ¶¶ 38–39; Ex. Q [ECF No. 44-8]. The Armed Forces Office followed Fairview's instruction regarding the Stinson Boulevard address. *Id.* ¶ 38; Ex. Q. The Armed Forces Office did not include "attention Maureen Ring" on the envelope or package. Countercl. ¶ 38. Fairview received the checks on September 5. *Id.* ¶ 40; Ex. Q. After receiving the checks, Fairview forwarded them to MIM. Countercl. ¶ 41. MIM deposited all fourteen checks at Bridgewater Bank on September 10, 2019. *Id.* ¶ 42. Fairview contacted MCA—and later the Armed Forces Office—claiming it had not received payment for the services rendered to R.A. and L.A. *Id.* ¶¶ 43–44. The Armed Forces Office alleges that despite the confidentiality clause in its agreement with MCA, MCA shared its confidential information with Fairview during these interactions. *Id.* ¶ 45. The Armed Forces Office does not allege what confidential information was shared with Fairview. *See id.*

*Fairview filed this case, and the Armed Services Office sought dismissal.* Fairview filed suit against the Armed Forces Office in December 2021, claiming it was not paid for the medical services it provided to R.A. and L.A. and asserting claims for breach of contract, quantum meruit, and breach of the implied covenant of good faith and fair dealing.

6

Compl. [ECF No. 1] ¶¶ 26–39.  Due to delays in effecting service, the Armed Forces Office did not enter an appearance until February 2023.  ECF Nos. 16–18.  It then filed a motion to dismiss for lack of subject-matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to join MIM and MCA as necessary parties.  ECF Nos. 24–28. The motion was heard and denied in June.  *See Fairview Health Servs. v. Armed Forces Off. of the Royal Embassy of Saudi Arabia*. --- F. Supp. 3d ---, No. 21-cv-2666 (ECT/TNL), 2023 WL 4203035 (D. Minn. June 27, 2023).  The motion was denied for three basic reasons: (1) the Armed Forces Office was not entitled to immunity under the Foreign Sovereign Immunities Act because contracting with Fairview was a commercial activity, *Id.* at *2–5; (2) Fairview had plausibly alleged its three causes of action, *id.* at *5–6; and (3) MIM and MCA were not required parties under Federal Rule of Civil Procedure 19, *id.* at *6–8.

*The Armed Services Office filed counterclaims and third-party claims, and Fairview and MCA sought dismissal.*  After its motion to dismiss was denied, the Armed Forces Office filed an answer, affirmative defenses, counterclaims against Fairview, and third-party claims against MCA, MIM, and GMS.  Countercl. ¶¶ 50–216.  The Armed Forces Office claims it has incurred attorneys' fees and costs, and "has otherwise been damaged by Fairview's, MIM's, GMS'[s], and MCA's misconduct."  *Id.* ¶ 49.  It asserts four causes of action against Fairview: breach of contract, negligence, declaratory judgment, and tortious interference with contract.  *Id.* ¶¶ 50–112.  It brings six claims against MCA: tortious interference with contract, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, contribution, and

indemnification. *Id.* ¶¶ 89–112; 177–216.  Fairview and MCA seek dismissal of each claim asserted against them under Rule 12(b)(6).

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

### A

The Armed Forces Office alleges Fairview breached the Preferred Rate Agreements by failing to accept the Armed Forces Office's fourteen payments, failing to alert the Armed Forces Office that the checks had been made payable to MIM, and breached its covenant not to sue by failing to accept payment or mitigate damages.  The Armed Forces Office and Fairview agree that Minnesota law governs this breach-of-contract claim.  *See* ECF No. 57 at 10–12; ECF No. 73 at 4–11 (citing Minnesota law).  Under Minnesota law, a breach-of-contract claim requires: "(1) a valid contract; (2) performance by the plaintiff

8

of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006) (citation omitted); *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (same).

For purposes of its motion, Fairview disputes only the fourth element, arguing the Armed Forces Office has not plausibly alleged that it suffered damages.  ECF No. 57 at 10–12.  The Armed Forces Office argues it suffered essentially four categories of damages: (1) nominal damages for invasions of its legal rights; (2) that it incurred costs paid to MCA for MCA's efforts to locate the missing checks; (3) that it suffered damages in the form of attorneys' fees and costs after it was thrust into multi-party litigation; and (4) that, if it loses this lawsuit, it would be compelled to pay the $1.3 million again.  Consider each of these damages assertions in turn.

(1) The Armed Forces Office's claim of nominal damages arising from "invasions of its legal rights" is not legally sufficient.  Logically, it is difficult to understand how it could be for the simple reason that the argument conflates "breach"—that is, the invasion of rights—with "damages" though Minnesota law says the two are distinct elements.  In other words, if this argument were correct, then every plausible claim of "breach" would show damages.  The Armed Forces Office cites a case, *Manderson as Tr. of I.B.E.W. 292 Health Care Plan v. Fairview Health Servs.*, for the proposition that "[n]ominal damages or demonstrating an invasion of a legal right are sufficient contract damages under Minnesota law."  No. 21-cv-1797 (JRT/TNL), 2022 WL 2442233, at *10 (D. Minn. July 5, 2022) (citing *Geo. Benz & Sons v. Hassie*, 293 N.W. 133, 137–38 (Minn. 1940)).  However, the court in *Manderson* found that it was "reasonable to infer from the Complaint

that the [plaintiff] suffered damages," because the plaintiff was deprived of the benefit of its bargain. *Id.* Here, the Armed Forces Office has not alleged or identified how it was deprived of the benefit of its bargain. It is undisputed that R.A. and L.A. received the bargained-for medical treatment. Compl. ¶ 8; Answer [ECF No. 42] ¶ 8. If there were some other contracted-for benefit of which the Armed Forces Office was deprived, the Armed Forces Office does not allege what it was.

(2) The Armed Forces Office says it was damaged because it paid MCA for MCA's "efforts to learn the whereabouts of the checks" in response to Fairview's inquiries. ECF No. 73 at 10. This theory is not alleged in the operative pleading. The Armed Forces Office did not plead any costs associated with this search in its counterclaims. In its opposition brief, the Armed Forces Office cites its counterclaims at ¶¶ 43–45 to show that these costs were pleaded. ECF No. 73 at 10. But those paragraphs say nothing about costs or about any work MCA undertook on the Armed Forces Office's behalf. The paragraphs allege that Fairview reached out to MCA to ask about the checks and that MCA disclosed the Armed Forces Office's confidential information to Fairview. Countercl. ¶¶ 43–45. The only costs the Armed Forces Office mentions it would have paid to MCA are in connection with negotiating invoices—*i.e.*, that if the negotiations did not result in a price reduction, MCA was paid hourly, whereas if MCA successfully negotiated reductions, the Armed Forces Office paid a twenty percent commission. *Id.* ¶ 25e.

(3) The Armed Forces Office relies on the "third-party litigation exception" to the "American rule" that each party is responsible for paying its own attorneys' fees, *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998), to claim damages of attorneys' fees

10

and costs it has incurred (and will continue to incur) in connection with this case. Minnesota courts have "always been exceedingly cautious when awarding attorney fees as damages. . . . absent a specific contract or statutory authorization." *Osborne v. Chapman*, 574 N.W.2d 64, 68 (Minn. 1998) (citation omitted). "Under the third-party litigation exception to the American Rule, which Minnesota has adopted, a court may 'award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party.'" *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342 (8th Cir. 2007) (quoting *Kallok*, 573 N.W.2d at 363). "The principle underlying the third-party-litigation exception is that a person injured by the tortious conduct of another is entitled to recover all damages caused by the tort." *Fafinski v. Johnson*, No. A22-0083, 2022 WL 3581896, at *2 (Minn. Ct. App. Aug. 12, 2022) (citing *Prior Lake State Bank v. Groth*, 108 N.W.2d 619, 622 (Minn. 1961)). For Fairview to be liable for the Armed Forces Office's attorneys' fees under the third-party litigation exception, it must have: "(1) committed a tortious act, (2) which propelled [the Armed Forces Office] into litigation, (3) with a third party." *OnePoint Sols.*, 486 F.3d at 352.

The Armed Forces Office claims it has been propelled into litigation with MCA, MIM, and GMS because of Fairview's claims in this case, but the Armed Forces Office does not specify the tortious act Fairview committed which thrust it into litigation. It claims that "Fairview's *breach* and *subsequent litigation* 'thrust' the [Armed Forces Office] into the instant multi-party litigation in order to protect the [Armed Forces Office's] interests." ECF No. 73 at 8 (emphasis added). If "breach" refers to Fairview's alleged breach of contract, the third-party litigation exception theory of damages fails for

11

insufficient pleading: a breach of contract is not a tort.  *See Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975) (explaining that there are only "exceptional case[s] where the breach of contract amounts to an independent tort").  The Armed Forces Office does not seem to intend "breach" to refer to negligence.  If it did, the Armed Forces Office has not plausibly alleged damages under this theory because it has not been forced into litigation with third parties.  That was the Armed Forces Office's choice.  *See Fairview Health Servs.*, 2023 WL 4203035, at *7–9.

The Armed Forces Office analogizes this case to a property case, *Miller v. Pioneer Abstract & Title Co.*, No. A05-779, 2005 WL 3470333 (Minn. Ct. App. Dec. 20, 2005), to argue it may claim attorneys' fees as damages.  In *Miller*, a property owner, Grell, sold plots of land to two buyers, the Dunns and the Millers.  *Id.* at *1.  The two plots overlapped by six acres, and the Dunns sued the Millers to determine proper ownership of the overlapping land.  *Id.*  The losing party, the Millers, then sued the title company, Pioneer, and sought attorneys' fees for both the Dunn litigation and the one initiated against Pioneer as damages.  *Id.*  The trial court awarded fees for the Dunn litigation and the appellate court—under an abuse-of-discretion standard—did not disturb the award.  *Id.* at *2–3.  The court held, "where a wrongful act involves a party in litigation with others or places a party in a position in relation to others that makes it *necessary* to incur expense to protect his interest, 'such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.'"  *Id.* at *3 (quoting *Tarnowski v. Resop.*, 51 N.W.2d 801, 804 (Minn. 1952)) (emphasis added).  But in making its decision, the appellate court also noted the "longstanding principle that an

abstracter who furnishes an erroneous or negligently prepared abstract is liable for the consequences of the error or negligence." *Id.* at *2. And that "[a]ttorney fees are an appropriate element of damages when '[t]he embarrassing dilemma' in which a party is placed is 'due solely to the wrongful act of [the other party].'" *Id.* at *3 (quoting *Bergquist v. Kreidler*, 196 N.W. 964, 965 (Minn. 1924)). We don't have anything like *Miller*'s facts here.

(4) The Armed Forces Office argues that it will have sustained damages if a judgment is entered against it in this case—that is, if it is required to pay Fairview roughly $1.3 million. This is not a plausible damages theory. The Armed Forces Office cites no authority that might support this theory. *See* ECF No. 73 at 10. And, as Fairview notes, counting a prospective award of damages to be paid to Fairview as the Armed Forces Office's own damages makes no logical sense. ECF No. 86 at 6. The reasoning is circular: if the Armed Forces Office were required in this case to pay $1.3 million in damages *to Fairview*, it could not then count the same $1.3 million as its damages and seek to be repaid *by Fairview*.[3]

---

[3]     To be clear, another problem undermines each of the Armed Forces Office's four damages theories: none were pleaded. A complaint—or in this instance counterclaims—cannot be amended through briefing. *Bhatti v. Fed. Hous. Fin. Agency*, 646 F. Supp. 3d 1003, 1015 (D. Minn. 2022) (citation omitted); *see Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))). Here, a careful, line-by-line review of the counterclaims shows that the Armed Forces Office's damages theories were first raised in briefing.

B

The Armed Forces Office alleges that Fairview was negligent in forwarding the checks to MIM.  To plead a negligence claim, a plaintiff must allege facts plausibly showing (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty was the proximate cause of the injury.  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).  "When asserting a negligence claim, '[t]he existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty' . . . . Generally, 'a person does not owe a duty of care to another—e.g., to aid, protect, or warn that person—if the harm is caused by a third party's conduct.'"  *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 77 (Minn. 2020) (quoting *Doe 169 v. Brandon*, 845 N.W.2d 174, 177–78 (Minn. 2014)).  "When a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence."  *Glorivigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (quoting *United States v. Johnson*, 853 F.2d 619, 622 (8th Cir. 1988)).  "[A] party is not responsible for damages in tort if the duty breached was merely imposed by contract and not imposed by law."  *Id.* (quoting *D & A Dev. Co. v. Butler*, 357 N.W.2d 156, 158 (Minn. Ct. App. 1984)) (cleaned up).

The disputed issue is whether Fairview owed a duty in the relevant sense to the Armed Forces Office.  The Armed Forces Office alleges Fairview "owed . . . a general duty to act reasonably with respect to any payments it received from the [Armed Forces Office] and to ensure that the funds were used for their intended purpose," and, alternatively, that "Fairview had a duty to manage that relationship [with MIM] and account for payments in

14

a manner that did not cause damage to the [Armed Forces Office]."  Countercl. ¶¶ 68, 72.
The Armed Forces Office seems to acknowledge that this theory rests on an allegation that
the Preferred Rate Agreements are not enforceable contracts (or at least that a jury or court
might find they are not enforceable).  Because the Preferred Rate Agreements are not
enforceable contracts, the Armed Forces Office argues, the duties Fairview owed are non-
contractual.  *See* ECF No. 73 at 13.

This theory is at odds with allegations supporting the negligence counterclaim and
is not supported by the authorities on which the Armed Forces Office relies.  In *this
counterclaim*, the Armed Forces Office does not allege that the Preferred Rate Agreements
are not contracts.  It alleges they are.  *See id.* ¶ 66 ("Pursuant to the [Preferred Rate
Agreements] and subsequent communications, Fairview negotiated an arrangement with
the [Armed Forces Office], through MCA, by which Fairview would accept payment from
the [Armed Forces Office] for services rendered by Fairview, even though the fees for
those services had originally been invoiced by Fairview's intermediary, MIM.").  In other
words, the Armed Forces Office alleges that Fairview's duty to accept payment arose out
of contracts, not an independent tort.  And a case on which the Armed Forces relies as
support for its negligence claim, *Schmidt v. Beninga*, 173 N.W.2d 401 (Minn. 1970), shows
why the claim is not plausibly alleged.  In *Schmidt*, the activity that gave rise to a duty of
care was the operation of a grain elevator: an elevator employee lost his leg due to a
truckdriver's alleged negligence.  *Schmidt*, 173 N.W.2d at 402–404.  The *Schmidt* opinion
gives no hint that the parties had a preexisting contractual relationship giving rise to a duty.
*See generally id.*  The situation here is materially different.  The Preferred Rate Agreements

obligated the Armed Forces Office to pay Fairview, and Fairview (the Armed Forces Office alleges) was obligated to accept payment. As alleged, any duty breached here was contractual, meaning the negligence claim is implausible. *See Glorivigen*, 816 N.W.2d at 584 ("When a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence.") (citation omitted).

## C

For its third counterclaim against Fairview, the Armed Forces Office seeks a declaratory judgment under 28 U.S.C. § 2201. The Armed Forces Office asserts that "an actual controversy" exists regarding liability for the transmittal of the checks to MIM. Under the Declaratory Judgment Act, a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Marty H. Segelbaum, Inc. v. MW Cap., LLC*, 673 F. Supp. 2d 875, 882 (D. Minn. 2009) (quoting 28 U.S.C. § 2201(a)). "District courts are afforded broad discretion over these claims." *Id.* (citing *Alsager v. Dist. Court of Polk Cnty.*, 518 F.2d 1160, 1163 (8th Cir. 1975) (federal courts have discretion "to make a declaration of rights," but no "duty to do so")). "In exercising this discretion, . . . '[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.'" *Id.* (quoting Fed. R. Civ. P. 57). However, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC*

*Mortg. Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012) (quoting *United States v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir. 1985)). Courts "do not hesitate to dismiss declaratory judgment claims when those claims 'allege[] . . . duties and obligations under the terms of the contract and asks the court to declare those terms breached.'" *Id.* (quoting *Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, No. 4:06-CV-1308 (CEJ), 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007)).

The question, then, is whether the Armed Forces Office's declaratory-judgment claim is encompassed by its breach-of-contract claim, or whether its scope is broader. The Armed Forces Office alleges that an "actual controversy exists between Fairview and the [Armed Forces Office] regarding who is liable for the transmittal of the checks to MIM. . . . Fairview contends the [Armed Forces Office] is liable. . . . The [Armed Forces Office] contends that is not liable to Fairview." Countercl. ¶ 87. Accordingly, the Armed Forces Office claims, "declaratory judgment is necessary and appropriate to determine the legal duties and liabilities of the parties related to the [Preferred Rate Agreements]." *Id.* ¶ 88. The Armed Forces Office contends that its declaratory-judgment claim is not duplicative because it "does more than merely seek a determination on its breach of contract claim." ECF No. 73 at 16. It says the declaratory-judgment claim identifies "several concerns," including "that declaratory judgment may be appropriate to determine the parties' rights and responsibilities, if any," under the Preferred Rate Agreements. *Id.* at 16–17.

The Armed Forces Office's breach-of-contract and declaratory-judgment claims are duplicative. The Armed Forces Office identifies "who is liable" under the Preferred Rate Agreements as an issue for declaratory judgment. Countercl. ¶ 87. Its opposition briefing

doesn't help: asking the Court to "determine the parties' rights and responsibilities" under the contract is a necessary part of deciding the breach-of-contract issue. ECF No. 73 at 16. The Armed Forces Office argues that its declaratory-judgment claim is broader than the breach-of-contract claim. *Id.* at 17–18. This is not persuasive. The issues it identifies seem part of the breach-of-contract analysis. The Armed Forces Office says, for example, that it will be necessary first "to determine the parties' duties and responsibilities related to the handling of the [Armed Forces Office's] payments," second "to assess the conduct of the [Armed Forces Office] and to determine whether the [Armed Forces Office] substantially complied with the [Preferred Rate Agreements]," and lastly "to consider whether the previous course of dealing and/or extra-contractual communications should be determinative of whether the [Armed Forces Office's] conduct was reasonable under the circumstances." ECF No. 73 at 18. Determining the parties' responsibilities under the contract, whether the parties substantially complied with the contract, and whether extra-contractual communications affected the contract all fall within the scope of the breach-of-contract claim. Fairview is correct in arguing the Armed Forces Office's declaratory-judgment claim "merely duplicates issues already in dispute in this lawsuit." ECF No. 57 at 13. Courts "do not hesitate" to dismiss duplicative declaratory judgment claims when they allege "duties and obligations under the terms of the contract" and then ask the court to "declare those terms breached." *MASTR Asset Backed Sec. Tr.*, 843 F. Supp. at 1001. That is what we have here.

D

The Armed Forces Office entered into a series of contracts—"Financial Guarantees"—with MIM, in which it promised to pay MIM for the medical services provided by Fairview.  The Armed Forces Office now claims that both Fairview and MCA tortiously interfered with these Financial Guarantees when they entered into the Preferred Rate Agreements without MIM.  A party may recover for the tort of intentional interference with contractual relations "by establishing (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional procurement of its breach; (4) without justification; and (5) damages resulting therefrom."  *Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 900 (Minn. 1982) (quoting *Royal Realty Co. v. Levin*, 244 Minn. 288, 69 N.W.2d 667, 671 (Minn. 1955)).[4]

Neither Fairview nor MCA challenge the first two elements of the claim: that a contract existed and that they had knowledge of the contract's existence.  *See* ECF No. 57 at 20 ("This claim fails because [Armed Forces Office] does not allege any breach of the [Preferred Rate Agreements] or Financial Guarantees allegedly procured by Fairview and MCA."); ECF No. 63 at 12 ("[Armed Forces Office] has not shown the third, fourth, or fifth elements necessary to sustain this claim against MCA.").  Assuming the Financial Guarantees are contracts and both Fairview and MCA had knowledge of them, the Armed

---

[4]     MCA argued in its briefing that New Jersey and District of Columbia law apply to the Armed Forces Office's claims against it.  *See* ECF No. 63 at 4.  But MCA, Fairview, and the Armed Forces Office all agreed at oral argument that, for purposes of these motions, there is no material difference between the three jurisdictions' laws and that Minnesota law appropriately may be applied to each cause of action against MCA.

Forces Office's tortious interference claim fails because it did not allege facts plausibly showing a breach or damages.

The Armed Forces Office does not explain how the Financial Guarantees were breached. The Financial Guarantees are general, one-page documents, signed only by the Armed Forces Office, promising payment for its citizens' medical treatment upon billing. *See, e.g.*, Ex. D [ECF No. 43-4] at AFO-RESA-000021 (explaining "[t]his letter will serve as your notification that the Armed Forces Office . . . will honor and guarantee payment for the above-mentioned patient to receive medical treatment," and setting certain billing conditions). The Armed Forces Office does not plausibly allege what breach Fairview and MCA induced.

The Armed Forces Office's damages theory is the same theory it advanced in support of its breach-of-contract claim—*i.e.*, that it would be compelled to pay $1.3 million again if Fairview prevails in this suit, that it is liable for attorneys' fees and costs from being thrust into this litigation, and that it incurred costs paid to MCA to investigate the missing checks. ECF No. 76 at 27. As explained above, the Armed Forces Office did not plausibly allege these damages in its counterclaims.

E

The Armed Forces Office and MCA entered into an agreement whereby MCA would negotiate invoices with Fairview on the Armed Forces Office's behalf. The Armed Forces Office alleges that MCA breached the agreement between them by disclosing the Armed Forces Office's confidential information and by taking actions the Armed Forces Office had not authorized.

20

MCA's motion to dismiss as to this claim returns us to familiar ground.  Under Minnesota law, a breach-of-contract claim requires: "(1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages."  *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006) (citation omitted); *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (same).  MCA disputes just the fourth element, arguing the Armed Forces Office has not plausibly pleaded damages.  ECF No. 63 at 8.

The Armed Forces Office's damages theories here are similar to those in its breach-of-contract claim against Fairview: "damages arising from its payment of over $1.3 million," particularly if the Armed Forces Office is required to pay again; attorneys' fees and litigation costs for being "drawn" into this litigation; and costs the Armed Forces Office would have paid to MCA for MCA's efforts to locate the lost checks.  The analysis is the same.  The Armed Forces Office failed to plausibly allege damages in its counterclaims.

F

The Armed Forces Office alleges MCA breached the implied covenant of good faith and fair dealing when MCA disclosed the Armed Forces Office's confidential information to Fairview and when it entered into Preferred Rate Agreements without negotiating the inclusion of material, specific payment terms.  Countercl. ¶¶ 193–94.  "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995)

(quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)); *see also* Restatement (Second) of Contracts § 205 (Am. Law Inst. June 2021 Update).  The duty "governs the parties' performance and prohibits a party from failing to perform for the purpose of thwarting the other party's rights under the contract." *Team Nursing Servs., Inc. v. Evangelical Lutheran Good Samaritan Soc'y*, 433 F.3d 637, 641–42 (8th Cir. 2006). "[A] plaintiff alleging a claim for breach of the implied covenant of good faith and fair dealing 'need not first establish an express breach of contract claim—indeed, a claim for breach of an implied covenant of good faith and fair dealing implicitly assumes the parties did not expressly articulate the covenant allegedly breached.'" *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir. 2012) (quoting *Hennepin Cnty.*, 540 N.W.2d at 503).

Whether a party has acted in bad faith is generally a question of fact reserved for the fact-finder, *see Anderson v. Medtronic, Inc.*, 382 N.W.2d 512, 515 (Minn. 1986), but that does not relieve a plaintiff of the burden to allege facts plausibly showing bad faith, *see Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1075 (D. Minn. 2021) ("A rule excluding fact questions from consideration on a Rule 12(b)(6) motion to dismiss would not faithfully reflect federal pleading standards.").  Examples of the type of conduct that may constitute bad faith include:

> wrongfully repudiating a contract, avoid[ing] performance by affirmatively blocking the happening of a condition precedent, refusing to allow a party to perform unless the performing party waived other contractual rights, and using a party's rejection of an offer as a defense to contract liability when the

> defendant persuaded the party to reject the offer in the first place.

*Cox*, 685 F.3d at 671 (internal quotation marks and citations omitted).

The Armed Forces Office has not plausibly alleged that MCA acted in bad faith. The Armed Forces Office does not allege any of the types of conduct that *Cox* contemplates may constitute bad faith: it does not claim MCA avoided performance, repudiated the contract, or refused to allow the Armed Forces Office to perform, for example.  Instead, the Armed Forces Office's claim is based on its allegations that (1) "MCA had an obligation to uphold the spirit of [the agreement between them], but failed to do so when, for example, it disclosed the [Armed Forces Office's] confidential information to Fairview" and (2) MCA entered into Preferred Rate Agreements "that were not in the [Armed Forces Office's] best interest."  ECF No. 76 at 18–19.  These assertions lack plausible factual support.

The Armed Forces Office pleads sparse, conclusory facts with respect to MCA's alleged disclosure of confidential information.  The only facts the Armed Forces Office provides regarding the disclosure are: "MCA on multiple occasions shared with Fairview confidential communications exchanged between MCA and the [Armed Forces Office]. MCA shared these communications without the [Armed Forces Office's] permission or consent.  In doing so, MCA was acting for its own benefit or in ways that might benefit Fairview but not the [Armed Forces Office]."  Countercl. ¶ 45.  Nothing more is pleaded regarding, for example, the contents or nature of the confidential information or the approximate dates of the disclosures.  And the Armed Forces Office does not explain or

allege facts showing how the Preferred Rate Agreements MCA negotiated were not in the Armed Forces Office's "best interest." The Armed Forces Office cites its counterclaims at ¶ 195 for that assertion, but that paragraph reads in full: "MCA's acts were contrary to the terms and spirit of the MCA Agreement." *Id.* ¶ 195. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

G

The Armed Forces Office alleges MCA owed a fiduciary duty to it and breached that duty when MCA failed to address the Armed Forces Office's potential prior obligations, failed to include material terms in the Preferred Rate Agreements, communicated with Fairview without the Armed Forces Office's permission, failed to protect the Armed Forces Office, and assisted Fairview.

In Minnesota, a breach-of-fiduciary-duty claim has four elements: "[1] duty, [2] breach, [3] causation, and [4] damages." *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). "A fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 330–31 (Minn. Ct. App. 2007) (citing *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)). Some relationships are fiduciary per se. "Per se fiduciary relationships include trustee-beneficiary, attorney-client, business partnerships, director-corporation, officer-corporation, and husband-wife." *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009). Apart from these per se fiduciary relationships, a "de facto" fiduciary

24

relationship may arise from a particular set of facts. "Where the parties' arrangement is not of a type that has been designated a per se fiduciary relationship, the general rule in Minnesota is that it may be found to constitute a de facto fiduciary relationship only where certain 'special circumstances' are present." *Carlson, Inc. v. Int'l Bus. Machs. Corp.*, No. 10-cv-3410 (JNE/TNL), 2013 WL 6007508, at *6 (D. Minn. Nov. 13, 2013). Several considerations are relevant to determining whether such "special circumstances" exist. These include whether "one party place[d] its trust and confidence in the other," whether "one of the parties enjoyed superior or excessive influence over the other party," whether one party relied on the other party's "superior knowledge," whether there was "[d]isparity in business experience and invited confidence," and "whether the alleged fiduciary knew of the dependent party's ignorance" or lack of understanding regarding the at-issue transaction or transactions. *Morton v. Park Christian Sch., Inc.*, No. 19-cv-03134 (ECT/LIB), 2022 WL 4803102, at *16 (D. Minn. Oct. 3, 2022) (citing 4 Minn. Dist. Judges Ass'n, Minnesota Practice, Jury Instruction Guides—Civil, JIG 23.10 (6th ed. 2021)); *see also Carlson, Inc.*, 2013 WL 6007508, at *6 (recognizing that special circumstances establishing a de facto fiduciary relationship may be based on "a wide disparity of experience and knowledge between the parties, uneven access to information and resources, invited confidences, and the surrender of financial control"). But Minnesota courts are reluctant "to sustain a cause of action for breach of a de facto fiduciary duty when the cause of action merely disguises another, more apposite but unavailing legal theory." *Swenson*, 764 N.W.2d at 603–04.

The Armed Forces Office plausibly alleges a de facto fiduciary relationship existed between it and MCA based on special circumstances.  It alleges, for example, that MCA held itself out as able to "help guide the [Armed Forces Office] through the complexities of the health care system in the United States and to be able to use its experience and expertise to help the [Armed Forces Office] obtain discounts and rate reductions." Countercl. ¶ 26.  MCA also represented that its services would be "managed by a US Attorney."  *Id.*  ¶ 25c; Ex. R § 1.3.  The special circumstances contemplated above, including "superior knowledge" and "disparity in business experience and invited confidence" are plausibly alleged to be present here.

Further, "in Minnesota, an agent owes fiduciary duties to its principal."  *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 721 (D. Minn. 2017). "Where such duties exist, even if arising from a contract, an alleged breach of those duties is 'distinct from the [alleged] breach of contract.'"  *Id.* (quoting *Jones v. W. Union Fin. Servs., Inc.*, 513 F. Supp. 2d 1098, 1100 (D. Minn. 2007)).  The Armed Forces Office has plausibly and sufficiently alleged it engaged MCA as its agent.  *See* Countercl. ¶¶ 25a, 98, 201; *see also* Ex. R § 1.4 ("MCA will be an agent for Client . . . .").

However, here again the Armed Forces Office runs into a problem with damages. The Armed Forces Office relies on *Manderson* to claim it does not have to plead damages "with particularity" at this stage.  In *Manderson*, the court declined to dismiss breach-of-contract claims at the pleadings stage "on the basis that the plaintiff insufficiently pleaded damages," citing *Park Nicollet Clinic* for its reasoning.  *Manderson*, 2022 WL 2442233, at *10.  Nevertheless, the Armed Forces Office argues it has alleged "various harms it

suffered due to MCA's breaches of its fiduciary duty, such as failing to address potential obligations that the [Armed Forces Office] or Fairview owed to MIM, failing to include essential terms in the [Preferred Rate Agreements], disclosing the [Armed Forces Office's] confidential information to Fairview, and otherwise assisting Fairview and not the [Armed Forces Office]" without pointing to where it pleaded those in its counterclaims.  ECF No. 76 at 23.  The Armed Forces Office is required to plausibly allege damages at this stage. It has not met its pleading requirements with respect to the breach-of-fiduciary-duty claim.

H

In Causes of Action XIV and XV, the Armed Forces Office asserts that, to the extent it is found liable to Fairview, it is entitled to contribution or indemnification from MCA. MCA argues that the agreement the Armed Forces Office and MCA entered into precludes both contribution and indemnification because the Armed Forces Office agreed it would assume sole responsibility for payments and would indemnify MCA.

"Indemnity arises out of a contractual relationship, either expressed or implied by law, which requires one party to reimburse the other entirely."  *Far E. Aluminium Works Co. v. Viracon, Inc.*, 520 F. Supp. 3d 1106, 1114 (D. Minn. 2021) (quoting *Hernick v. Verhasselt Constr., Inc.*, Nos. CX-02-1424, C0-02-1478, 2003 WL 1814876, at *4 (Minn. Ct. App. Apr. 8, 2003)).  "A claimant may recover indemnity . . . [w]here there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved."  *Id.* (alteration in original) (citations and internal quotations omitted)."

27

The agreement between the Armed Forces Office and MCA specifically states that the Armed Forces Office "agrees on behalf of itself and Patient that they will indemnify and hold harmless MCA and its directors, officers, employees and contractors . . . ." Ex. R § 6.2. There is, therefore, "an express contract between the parties containing an explicit undertaking to reimburse for liability," *Far E. Aluminium Works*, 520 F. Supp. 3d at 1114, but only in one direction: only the Armed Forces Office agreed to indemnify MCA. The Armed Forces Office's indemnity claim therefore fails, and MCA's motion to dismiss will be granted as to Cause of Action XIV.

"Contribution is an equitable doctrine that requires that persons under a common burden share that burden equitably." *Id.* at 1115 (quoting *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. Ct. App. 2001)). Contribution "requires proof of '(1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability.'" *Id.* (quoting *Nuessmeier Elec.*, 632 N.W.2d at 251). "Common liability 'arises when both parties are liable to the injured party for part or all of the same damages.'" *Id.* (quoting *Nuessmeier Elec.*, 632 N.W.2d at 251). The Armed Forces Office does not—and could not—plausibly allege that it and MCA share common liability to Fairview. MCA's motion will be granted as to Cause of Action XV.

*

At oral argument and in two footnotes in its briefs, *see* ECF No. 73 at 11 n.1; ECF No. 76 at 17 n.3, the Armed Forces Office requested leave to amend its counterclaims and third-party claims if Fairview and MCA's motions were granted. This request will not be

granted as part of this order.  The Armed Forces Office did not describe its proposed amendments.  Nor did it file a proposed amended pleading as required by D. Minn. LR 15.1(b).  It is not feasible to determine the propriety of any proposed amendment without the chance to review the proposed amendments.  Regardless, the dismissal here will be without prejudice to the Armed Forces Office's right to seek leave to amend in the ordinary course before Magistrate Judge Leung.  Under the operative scheduling order, the deadline to serve motions seeking leave to amend pleadings is December 29, 2023.  ECF No. 70 ¶ 4(b).  And the dismissal-worthy problems identified here are largely factual in nature.  In other words, the Armed Forces Office might conceivably add factual allegations and replead the dismissed claims with success.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Plaintiff and counter-defendant Fairview Health Services' Motion to Dismiss Counterclaims [ECF No. 56] is **GRANTED**.

2.    Third-party defendant Medical Cost Advocate, Inc.'s Motion to Dismiss [ECF No. 60] is **GRANTED**.

3.    The Armed Forces Office of the Royal Embassy of Saudi Arabia's counterclaims against Fairview Health Services and third-party claims against Medical Cost Advocate, Inc. are **DISMISSED WITHOUT PREJUDICE**.

Date: December 7, 2023              s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court